2006 BNH 036
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 04-14346-JMD |
| | Chapter 7 |
| William McNeir Richmond, | |
|       Debtor | |
| | |
| New Hampshire Supreme Court | |
| Professional Conduct Committee, | |
|       Plaintiff | |
| | |
| v. | Adv. No. 06-1007-JMD |
| | |
| William McNeir Richmond, | |
|       Defendant | |

*Bruce A. Harwood, Esq.*
*Sheehan, Phinney, Bass + Green, P.A.*
*Manchester, New Hampshire*
*Attorney for Plaintiff*

*Joseph A. Foster, Esq.*
*McLane Graf Raulerson & Middleton, P.A.*
*Manchester, New Hampshire*
*Attorney for Debtor/Defendant*

## MEMORANDUM OPINION

### I. INTRODUCTION

The New Hampshire Supreme Court Professional Conduct Committee (the "Committee") filed a complaint pursuant to 11 U.S.C. § 523(a)(7) seeking to except from the Debtor's discharge his obligations to the Committee arising out of two attorney disciplinary proceedings commenced by the Committee against the Debtor. The parties agreed at a pretrial hearing that

the matter could be decided on a stipulated record.  Toward that end the parties submitted a stipulation of undisputed material facts and the Committee filed a motion seeking summary judgment in its favor.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The undisputed facts are as follows.  The New Hampshire Supreme Court established the Committee pursuant to Rule 37 ("Rule 37") of the Rules of the Supreme Court of the State of New Hampshire to assist the New Hampshire Supreme Court in administering its disciplinary function with respect to attorneys admitted to practice law in the State of New Hampshire.  The Committee is funded through an annual assessment of attorneys imposed by an order of the New Hampshire Supreme Court.  The remaining portion of the Committee's budget is funded by the Court's Character and Fitness Committee.

The Debtor was licensed by the New Hampshire Supreme Court to practice law in the State of New Hampshire.  Prior to the Debtor filing chapter 7 bankruptcy, the Committee filed a petition ("Richmond I") on March 6, 2003, with the New Hampshire Supreme Court alleging that the Debtor violated the New Hampshire Rules of Professional Conduct (the "Professional Conduct Rules").  The New Hampshire Supreme Court referred the Committee's petition to a judicial referee for a hearing.

On August 29, 2004, the judicial referee issued his findings and recommendations (the "Richmond I Findings and Recommendations") pursuant to which he recommended that the New Hampshire Supreme Court find that the Debtor violated the Professional Conduct Rules. Pursuant to the Richmond I Findings and Recommendations, the judicial referee also recommended that the New Hampshire Supreme Court issue a variety of sanctions against the Debtor, including a suspension from the practice of law for six months, the appointment of an attorney (the "Appointed Attorney") to make an inventory of any client files and trust accounts of the Debtor, and that Richmond "be assessed all expenses incurred in the investigation and prosecution of this matter."

In its decision in In re Richmond's Case, 152 N.H. 155 (2005), the New Hampshire Supreme Court found that the judicial referee applied the correct standards in evaluating Richmond's conduct and that the record supported the judicial referee's findings. The New Hampshire Supreme Court also agreed with the judicial referee's recommendation that Richmond (a) be suspended from the practice of law for six months, (b) surrender his client files for inventory by a court appointed attorney, and (c) "reimburse the committee for the costs of investigating and prosecuting the" matter. The Court then remanded the matter to the judicial referee "to determine the costs associated with this case."

The amounts the New Hampshire Supreme Court ordered to be reimbursed consisted of two elements: (a) costs incurred by the Committee in connection with the prosecution of the underlying petition (the "Richmond I Petition Expenses"), and (b) the costs incurred or to be incurred by the Appointed Attorney (the "Richmond I Appointed Attorney Expenses"). As of April 17, 2006, the Richmond I Petition Expenses totaled $13,776.19, and the Committee had

not yet received an invoice from the New Hampshire Supreme Court in connection with the Richmond I Appointed Attorney Expenses.

On or about November 13, 2003, the Committee filed a second petition ("Richmond II") with the New Hampshire Supreme Court alleging that the Debtor violated the Professional Conduct Rules in connection with a different matter. The New Hampshire Supreme Court referred the matter to a judicial referee.

On January 11, 2006, the judicial referee issued his findings and recommendations (the "Richmond II Findings and Recommendations") pursuant to which he recommended that the New Hampshire Supreme Court find that the Debtor violated the Professional Conduct Rules. The judicial referee also recommended that the New Hampshire Supreme Court disbar the Debtor from the practice of law. The judicial referee did not assess costs and expenses against the Debtor. The Committee believes this was an oversight. The Debtor disagrees.

On January 13, 2006, the New Hampshire Supreme Court issued the Richmond II Findings and Recommendations to the parties to that proceeding and invited the parties to submit responses in the event the parties wished to contest the Richmond II Findings and Recommendations. The Committee and the Debtor filed pleadings with the New Hampshire Supreme Court. In its pleadings, the Committee requested the assessment of costs and expenses against the Debtor in connection with Richmond II.[1]

---

[1] Subsequent to the filing of the parties' stipulation of undisputed material facts and the Committee's motion seeking summary judgment, the New Hampshire Supreme Court entered a decision, In re Richmond's Case, 904 A.2d 684 (N.H. 2006), wherein it found that the Debtor violated the Professional Conduct Rules. The New Hampshire Supreme Court disbarred the Debtor and ordered him to (a) "reimburse the committee for all of its expenses, including legal fees, incurred in investigating and prosecuting this matter" (the "Richmond II Petition Expenses"), and (b) notify the Committee of all jurisdictions in which the Debtor is admitted to practice law. Richmond's Case, 904 A.2d at 697. The New Hampshire Supreme Court stated further that "[i]f necessary, the [C]ommittee may file a written

4

### III.  DISCUSSION

The Committee seeks summary judgment on its complaint under § 523(a)(7) of the Bankruptcy Code with respect to the Richmond I Petition Expenses, the Richmond I Appointed Attorney Expenses, the Richmond II Petition Expenses, and any other cost and expense assessment made by the New Hampshire Supreme Court in connection with Richmond I and Richmond II (collectively, the "Disciplinary Costs").  Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The parties agree that no genuine issues of material fact are in dispute and have submitted for the Court's review a stipulated record.

The legal issue before the Court is whether the Disciplinary Costs, which have been or will be assessed against the Debtor, are nondischargeable as a matter of law pursuant to § 523(a)(7) of the Bankruptcy Code.  The issue is one of first impression in this district.  Section 523(a)(7) provides in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . to the extent that such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . .

11 U.S.C. § 523(a)(7).

---

request for the appointment of an attorney to inventory the [Debtor]'s files and take such action as seems indicated to protect the interests of the [Debtor]'s clients as well as the interest of the [Debtor]."  Id.

5

Exceptions to discharge under § 523(a) of the Bankruptcy Code are to be narrowly construed and construed in favor of the debtor.  See Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).  Creditors that object to the dischargeability of a debt must prove each element of the exception under § 523(a) by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991) (stating the standard of proof under § 523(a) is preponderance of the evidence); Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997) (same).  Because exceptions to discharge are narrowly construed in order to further the Bankruptcy Code's "fresh start policy," a creditor must demonstrate that its claim comes squarely within an exception to discharge contained in § 523(a).  Palmacci, 121 F.3d at 786 (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994)).

To succeed on its complaint seeking to except the Debtor's obligations to it from discharge, the Committee must establish that the debt:

1. Constitutes a fine, penalty, or forfeiture;

2. Is to be paid to or for the benefit of a governmental unit; and

3. Is not compensation for actual pecuniary loss.

11 U.S.C. § 523(a)(7); see Attorney Grievance Comm'n of Maryland v. Smith (In re Smith), 317 B.R. 302, 306 (Bankr. D. Md. 2004).  The parties agree that the money to be paid to the Committee is a debt and the Committee is a governmental unit within the meaning of § 523(a)(7) as the Committee is a regulatory board governed by the New Hampshire Supreme Court acting under the statutory and constitutional authority of the State of New Hampshire.  The Court must determine, then, whether the debt "constitutes a fine, penalty, or forfeiture" and "is not compensation for actual pecuniary loss."  The Committee has cited several cases from other

6

jurisdictions all but one of which conclude that costs assessed against a disciplined attorney are not dischargeable.  The Debtor argues that those cases are not determinative as the Court must make an individualized analysis based on the particular provisions of Rule 37 and New Hampshire's attorney disciplinary system.

**A.  Fine, Penalty, or Forfeiture?**

The Court must first determine whether the Disciplinary Costs assessed by the New Hampshire Supreme Court are in the nature of a fine, penalty, or forfeiture within the meaning of § 523(a)(7).  Rule 37 of the Rules of the Supreme Court of the State of New Hampshire provides that "[a]ll expenses incurred by the attorney discipline system in the investigation and enforcement of discipline may, in whole or in part, be assessed to a disciplined attorney to the extent appropriate."  Rule 37(19) (2004).  The terms of the Rule make clear that the assessment of expenses is discretionary and may be done only "to the extent appropriate."  On its face, such language suggests that the assessment of costs may be imposed as part of a sanction for violating the Professional Conduct Rules.

In Kelly v. Robinson, 479 U.S. 36 (1986), the United State Supreme Court considered whether an order to pay restitution in a criminal proceeding created a non-dischargeable debt under § 523(a)(7).  See Smith, 317 B.R. at 308.  The Kelly case involved a debtor who was attempting to discharge a restitution order that was entered as a condition of the debtor's probation.  Id.  In considering the reach of § 523(a)(7), the United States Supreme Court held that § 523(a)(7) "creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures" and concluded that restitution orders are sufficiently penal in nature to fall under § 523(a)(7).  Kelly, 479 U.S. at 50-51.

7

In Attorney Grievance Comm'n of Maryland v. Smith (In re Smith), the United States Bankruptcy Court for the District of Maryland concluded that the rationale of Kelly and its progeny may be extended to attorney disciplinary proceedings. Smith, 317 B.R. at 308.  In reaching its decision, the Maryland court indicated that the ultimate goal of both criminal and attorney disciplinary proceedings is to protect the pubic. Id. at 309.  "The imposition of sanctions and costs protects the public by restricting a lawyer's right to practice law when warranted.  Monetary penalties imposed against the offender, whether part of any attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests." Id.

Citing several cases, the Debtor argues that the New Hampshire attorney disciplinary system is not penal in nature.  The Court acknowledges that the New Hampshire Supreme Court has stated in numerous cases that its disciplinary action is not intended to punish an offending attorney. See, e.g., In re Kersey's Case, 150 N.H. 585, 586 (2004) ("Disciplinary action is not taken as a mode of inflicting punishment for an offense.") (quotations omitted); Shillen's Case, 149 N.H. 132, 139 (2003) (same); In re Morgan's Case, 143 N.H. 475, 477 (1999) (same); In re Doherty's Case, 142 N.H. 446, 450 (1997) (same); Welts' Case, 136 N.H. 588, 592 (1993) (same); Silverstein's Case, 108 N.H. 400, 401 (1967) (same); Feld's Case, 149 N.H. 19, 28 (2002) ("Lawyer discipline is not intended to be punishment."); Flint's Case, 133 N.H. 685, 688 (1990) ("The power to remove attorneys from office is necessary not as a vehicle for inflicting punishment . . ."). Despite such statements that the New Hampshire attorney disciplinary system is not intended to impose punishment on a disciplined attorney, the term "discipline" is commonly understood and defined to mean "[p]unishment intended to correct or instruct; esp., a

sanction or penalty imposed after an official finding of misconduct" and "punishment or penalties (often termed 'sanctions') imposed by a disciplining agency on any attorney who has breached a rule of professional ethics."  Black's Law Dictionary 496 (8th ed. 2004); see also Bryan A. Garner, A Dictionary of Modern Legal Usage 280 (2d ed. 1995) (disciplinary relates to (1) discipline or (2) carrying out punishment); Webster's Ninth New Collegiate Dictionary 360 (1983) (discipline means to punish or penalize).  Further, the term "sanction" is defined as a "penalty or coercive measure that results from failure to comply with a law, rule, or order."  Black's Law Dictionary at 1368.  To "sanction" someone is to "penalize by imposing a sanction."  Id. at 1369.  The New Hampshire Supreme Court has further indicated that when determining what "sanction" should be imposed in an attorney disciplinary proceeding, the New Hampshire Supreme Court's "focus rests, not on punishing the offender, but on protecting the public, maintaining public confidence in the bar, and preventing similar conduct in the future."  Astle's Case, 134 N.H. 602, 605 (1991); Welt's Case, 136 N.H. at 592-93 (stating that the purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and deter future misconduct).  This language does not foreclose the notion that attorney discipline can be punishment--just that punishment should not be court's the main focus.

     Thus, like the attorney disciplinary system in Maryland, the New Hampshire system seeks to protect the public by deterring other attorneys from committing a similar offense and by rehabilitating the offending attorney.  Smith, 317 B.R. at 310.  "These two goals, deterrence and rehabilitation, are the same goals the [United States] Supreme Court sought to protect in allowing restitution orders in criminal proceedings to be excepted from discharge."  Id. at 311;

9

see also Whitehouse v. LaRoche, 277 F.3d 568, 573 (1st Cir. 2002) ("[I]n order to qualify for a dischargeability exception under subsection 523(a)(7), normally the particular penalty must serve some 'punitive' or 'rehabilitative' governmental aim, rather than a purely compensatory purpose.").

The Debtor argues that the costs imposed upon disciplined attorneys do not serve any rehabilitative or deterrence goals but, rather, have been imposed as an "afterthought" and serve merely to refund the Committee's cost in carrying out its investigatory and prosecutorial function. The Committee argues that costs do deter and are considered part of the sanction imposed on disciplined attorneys. In assessing costs in Astle's Case, the New Hampshire Supreme Court noted it was the attorney's conduct that warranted the assessment of costs thus supporting the notion that the imposition of costs is part of the sanction. Astle's Case, 134 N.H. at 607. In In re Morgan's Case, 143 N.H. 475 (1999), the New Hampshire Supreme Court was even more explicit in indicating the imposition of costs promotes the goals of the New Hampshire attorney disciplinary system:

> We conclude . . . a conditionally delayed two-year suspension, coupled with an obligation to pay costs, will protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future.

Morgan's Case, 143 N.H. at 476 (emphasis added). Other cases suggest that the reimbursement of costs may be considered part of the discipline to be imposed on offending attorneys as the payment of such costs are often a condition for reinstatement and therefore such costs should not be considered simply costs that are awarded to a prevailing party in civil litigation as argued by the Debtor. See Feld's Case, 149 N.H. at 30 (indicating debtor must comply with all terms and conditions of the New Hampshire Supreme Court's order, presumably including the

reimbursement of expenses, before seeking reinstatement); Flint's Case, 133 N.H. at 688 (describing each party's recommendation for discipline, which included the reimbursement of expenses as an element to be imposed or not be imposed).

  The Court concludes that the costs assessed pursuant to Rule 37 by the New Hampshire Supreme Court against disciplined attorneys promotes the state's penal and rehabilitative interests.  Accordingly, such costs, and specifically the Disciplinary Costs, are in the nature of a fine or penalty within the meaning of § 523(a)(7).  The Court's conclusion is consistent with the decisions made by courts in other jurisdictions that have considered the issue.  See, e.g., Smith, 317 B.R. 302; Supreme Court of Ohio v. Bertsche (In re Bertsche), 261 B.R. 436 (Bankr. S.D. Ohio 2000); Carlson v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois (In re Carlson), 202 B.R. 946 (Bankr. N.D. Ill. 1996); State Bar of Michigan v. Doerr (In re Doerr), 185 B.R. 533 (Bankr. W.D. Mich. 1995); Florida Bar v. Cillo (In re Cillo), 159 B.R. 340 (Bankr. M.D. Fla. 1993), aff'd, 165 B.R. 46 (M.D. Fla. 1994); In re Williams, 158 B.R. 488 (Bankr. D. Idaho 1993); Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois v. Betts (In re Betts), 149 B.R. 891 (Bankr. N.D. Ill. 1993), aff'd, 165 B.R. 870 (N.D. Ill. 1994), aff'd, 51 F.3d 275 (7th Cir.), cert. denied, 516 U.S. 1012 (1995); Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois v. Lewis (In re Lewis), 151 B.R. 200 (Bankr. C.D. Ill. 1992); Board of Attorneys Professional Responsibility for State of Wisconsin v. Haberman (In re Haberman), 137 B.R. 292 (Bankr. E.D. Wis. 1992); but see State Bar of California v. Taggart (In re Taggart), 249 F.3d 987 (9th Cir. 2000) (certain costs assessed

in connection with attorney disciplinary proceeding under applicable California law held dischargeable).[2]

### B. Actual Pecuniary Loss?

The Court is next faced with the issue of whether the Disciplinary Costs are "compensation for actual pecuniary loss." The Debtor argues that the Disciplinary Costs are compensation for actual pecuniary loss because the costs are based upon the Committee's expenses and not based on any set fine or range of fines. The Committee argues that the Disciplinary Costs are not compensation for actual pecuniary loss because the Committee suffers no loss in fulfilling its governmental function by investigating and pursuing disciplinary action against attorneys. Rather, the Committee's work is funded through an annual assessment of attorneys imposed by an order of the New Hampshire Supreme Court (and other funding provided by the New Hampshire Supreme Court's Character and Fitness Committee) and therefore the Committee is not dependent upon the payment of monetary sanctions by any disciplined attorney to fulfill its obligations.

As in the Smith case, the Committee is required to carry out its disciplinary functions regardless of whether it recovers costs awarded to it. Smith, 317 B.R. at 312. The cost of carrying out the Committee's governmental function is not an actual pecuniary loss to the state. Id. In addition, "[t]he mere fact that a penal sanction is calculated by reference to actual costs does not, in and of itself, transform the penalty into compensation for pecuniary loss. . . . The fact that the judgment for costs was based on actual costs incurred by the Commission does not

---

[2] The Court notes that the Taggart case is decided under California law which has a mandatory fee shifting statute and a statute establishing a set fine. This makes the California attorney disciplinary system distinguishable from the New Hampshire attorney disciplinary system and, thus, the Taggart case is inapplicable to this proceeding.

alter the conclusion that the costs flow from the disbarment sanction and are therefore penal in nature." Id.

Thus, even though the assessed costs may result in reimbursement to the Committee, compensation is not the primary objective under Rule 37. See Haberman, 137 B.R. at 295. Rather, the imposition of costs is intended to further the primary purposes of the disciplinary system: to deter future misconduct and to convey to the public the message that the practice of law in New Hampshire is closely scrutinized so as to maintain public confidence in the bar and preserve the integrity of the legal profession. See id.

The Court notes further that strong public policy reasons exist for holding that an assessment of costs in an attorney disciplinary proceeding be deemed nondischargeable. See Smith, 317 B.R. at 313. "It is in the public's best interest to prevent attorneys who violate professional rules of conduct from eluding punishment for professional improprieties by filing for bankruptcy." Id. Accordingly, the Court concludes that the imposition of costs, and specifically the Disciplinary Costs, is not compensation for actual pecuniary loss within the meaning of § 523(a)(7).

**IV. CONCLUSION**

For the reasons stated above, the Court concludes that the Debtor's obligation to pay the Disciplinary Costs to the Committee falls within the provisions of § 523(a)(7) as it is a debt "for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Accordingly, the Debtor's obligations to the Committee arising out of Richmond I and Richmond II are non-dischargeable. This opinion

constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

    ENTERED at Manchester, New Hampshire.


Date:   September 28, 2006                     <u>/s/ J. Michael Deasy</u>
                                                     J. Michael Deasy
                                                     Bankruptcy Judge